IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

NICHOLE LOVE,                          )
                                       )
          Plaintiff,                   )          Civil Action No. 5:20-cv-00070
                                       )
v.                                     )
                                       )          By: Elizabeth K. Dillon
CPT. TODD LLOYD, et al.,               )              United States District Judge
                                       )
          Defendants.                  )

**MEMORANDUM OPINION**

In a case reminding the court of the proverb, "An ounce of prevention is worth a pound of cure," plaintiff Nichole Love, while in the custody of the Middle River Regional Jail ("MRRJ"), was sexually assaulted by a male inmate, also in the custody of MRRJ, even though there was a "keep separate" order in place.  Compounding the tragedy, Love was then assisted by an attorney who apparently ghostwrote her initial complaint, indicated he would assist her, and then left her to represent herself.  The original suit  named as defendants the Middle River Regional Jail Authority ("MRRJA"), former Jail Superintendent Jack Lee, Captain Todd Lloyd, Lieutenant Rickie Maddox, and "other unknown jail officers."[1]  (Original Compl., Dkt. No. 1.)  Much later, Love obtained counsel and twice amended her complaint, initially adding "Deputy Swan," "Booking Doe Defendants," and "Correctional Doe Defendants" as defendants in her first amended complaint (Dkt. No. 37) and then adding Lt. Carlston Vandevander, Officer Chris Costello, Officer Jason Carter, Sgt. Bradford Barker, and Cpl. David Baugess as defendants in her second amended complaint[2] (Dkt. No. 59).  Love asserts violations of her constitutional

---

[1]  MRRJA and former Superintendent Lee have since been terminated from this action.

[2]  In the Second Amended Complaint, Love removed "Deputy Swan," "Booking Doe Officers," and "Correctional Doe Officers" as defendants.

rights—specifically under the First, Eighth, and Fourteenth amendments—and claims of state-law gross negligence arising out of the sexual assault.

Defendants Vandevander, Costello, Carter, Barker, and Baugess ("movant-defendants") have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that those claims are time barred.  After a hearing and full briefing, the matter is ripe for resolution.  Because the applicable statutes of limitations bar Love's claims against these defendants and the relation-back doctrine does not apply, the motion to dismiss will be granted and the claims against them will be dismissed.[3]

## I.  BACKGROUND

At the motion-to-dismiss stage, the court must assume the truth of the facts alleged in the complaint and construe them in the light most favorable to the plaintiff.  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  The second amended complaint is the subject of the pending motion (Dkt. No. 59); however, as discussed herein, the basis of movant-defendants' motion is that certain claims in the second amended complaint do not relate back to the original complaint.  And "[i]n determining whether a claim relates back, courts will look to the 'operational facts' set forth or attempted to be set forth in the original complaint to determine whether the original complaint gave the defendants notice regarding the claim or defense asserted in the amended pleading."  *Hooper v. Sachs*, 618 F. Supp. 963, 977 (D. Md. 1985) (internal citation omitted) (citing, *e.g.*, 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1497 at 495 (1971)).  Accordingly, the court will consider certain allegations from the original complaint to the extent they are relevant to relation-back.

---

[3]  Of course, a dismissal of the claims against these defendants does not prevent MRRJ from taking appropriate remedial measures to prevent similar assaults in the future.

**A.  Original Complaint (Filed October 15, 2020)**

In Love's original (pro se) complaint, filed on October 15, 2020, she alleged that, on October 17, 2018, she was sexually assaulted by Kristopher Wingfield in the bathroom of the intake area at MRRJ.  At the time, Love and Wingfield were co-defendants in a state criminal matter, and Love planned to testify against Wingfield at a court in Bath County earlier that day.[4] In light of the risk that Wingfield would harm Love due to her testimony against him, MRRJ officials were tasked with keeping the two separate.  After the court appearance, Love and Wingfield were returned to MRRJ in separate vehicles.  However, after arriving back at the Jail, Love and Wingfield were uncuffed and told to sit on a bench in the intake area.  Wingfield taunted Love; Love was afraid and ignored him.  Soon thereafter, Love went to a public restroom in the jail intake area.  Wingfield then followed Love into the bathroom and sexually assaulted her.

Love eventually got away and returned to the bench intake area.  According to the complaint, the Jail officers were not paying attention.  Love was afraid to report the crime in front of Wingfield and did not trust the male Jail officers, so she asked to speak with Deputy Swan, a female officer; however, Deputy Swan was on her lunch break.

Later, Love called her mother and told her about the assault.  Her mother then called Deputy Swan to report the assault.  Deputy Swan then arrived, locked Love in a holding cell and told her that she was going to get Lt. Maddox.  Meanwhile, Wingfield was neither separated from the intake area nor placed in handcuffs; he approached the holding cell where Love was being held in order to say "sorry" for assaulting her.  When Lt. Maddox arrived, he removed Love from the holding cell and took her to Major Shiflett's office, where Cpt. Lloyd was

---

[4] However, as clarified in the first amended complaint, Wingfield ultimately entered a guilty plea, negating the need for Love's testimony.  (Dkt. No. 37 ¶ 22.)

waiting.  Love reported the assault to Major Shiflett and Cpt. Lloyd.  Afterward, Love was placed in segregation and eventually taken to the emergency room.  Six hours later, she returned to MRRJ and was again placed in segregation.  Love's request to see Lt. Maddox was denied. Love was not allowed to shower or change her clothes during this time, which made her feel dirty.  She further alleged that the Jail officers were rude to her and no one came to talk to her about what happened.

Love alleges that she suffers from PTSD and clinical depression, so she used a bed sheet in an attempt to hang herself.  She was found by an officer and then examined by a jail nurse. However, Lt. Maddox and an unknown employee at MRRJ laughed at her and accused her or attempting to kill herself just for attention.  "They told [her] if [she] didn't admit to doing this for attention they would have to strip [her] naked and put [her] in a padded room for 24 hours." (Dkt. No. 1 at 5.)  As a result, Love "felt pressured into saying [she] was only trying to get attention."

A mental health professional visited Love after the incident, at which time she "again felt pressured to tell them what they wanted to [hear], because of the threat that [she] would be stripped naked and locked in a padded cell."  (Dkt. No. 1 at 5.)  She later filed a grievance, stating that "the officers treated [her] like it was all her fault, and punished [her] by placing her in 'lock down' for no reason."  During this time, she repeatedly asked to be seen by a counselor for the sexual assault.  She made another such request while reporting the assault to the Augusta County Sherriff's Office, after which she was seen by a counselor at MRRJ on one occasion for approximately one hour.  The counselor told Love at that time that they would be meeting on a weekly basis thereafter, but Love reports that she never saw the counselor again.

The initial complaint was filed against MRRJA, former Superintendent Lee, Cpt. Lloyd, Lt. Maddox, and "UNKNOWN JAIL OFFICERS," claiming negligence as well as violations of the Due Process Clause and the Eighth Amendment.  Her claims note that she "believe[s] that the MRRJ, Supervisor Lee, and other Jail officers violated [her] rights," in that "[t]hey failed to keep [her] separated from Mr. Wingfield despite knowing he was likely to harm [her]," they "mocked [her], ignored [her], refused to let [her] shower and forced [her] to be alone with [her] (dark) thoughts without proper mental health care."  She further alleged that "[her] cell was not properly monitored, especially given [she] had just been sexually assaulted, which allowed [her] to give in to [her] depressive thoughts and attempt to commit suicide. In the weeks and months after the assault, [she] was still not provided with proper mental health treatment despite repeatedly asking to speak to a counselor."

Love then attempted to describe the involvement of each defendant.  She noted that "[f]ormer Superintendent Lee supervised and trained the jail officers," "the [MRRJA] had ultimate responsibility for operation of the jail," and "[b]oth Lee and MRRJA had policies that encouraged the violation of [her] rights, such as improper supervision, training, and failure to provide mental health care to inmates."  Further, she alleged that "[c]aptain L[l]oyd is the Chief of Operations at MRRJ," and "LT Maddox and the Unknown Officers are MRRJ officers also employed at the jail who were responsible for booking [her] into the Jail and keeping me separated from [Wingfield] ---- the man who assaulted [her] while [they] were in the Jail's custody."  But the complaint never explicitly named Lt. Vandevander, Officers Costello or Carter, Sgt. Barker, or Cpl. Baugess, nor did it ascribe conduct to any particular "unknown jail officer."

**B.  First Amended Complaint (Filed January 19, 2022)**

In December 2021, Love retained her current counsel to represent her in this matter.  On January 19, 2022 (about 15 months after initially filing this action), Love—through her new counsel—filed the first amended complaint, alleging a First Amendment retaliation claim in addition to the Due Process, Eighth Amendment, and state-law negligence claims that were included in her original complaint.  (First Am. Compl., Dkt. No. 37.)  The first amended complaint named the following parties as defendants: Deputy Swan, Captain Todd Lloyd, Lieutenant Rickie Maddox, Booking Doe Defendants, and Correctional Doe Defendants. Attempting to identify those parties, Love alleged that "Booking Doe Defendants are unknown jail officers and employees that oversaw the booking and intake area at the MRRJ and were responsible for supervising incarcerated individuals before they were transferred to their cells, including the operation of the external lock on the restroom door in the intake area," and that "Correctional Doe Defendants were unknown jail officers and employees that served as jail guards and were responsible for maintaining the health and safety at the MRRJ at all times relevant to this Complaint."  (*Id.* ¶¶ 8–9.)

Cpt. Lloyd and Lt. Maddox answered the complaint.  (Dkt. No. 38.)  Deputy Swan moved to dismiss the claims against her (Dkt. No. 45), which Love then voluntarily dismissed (Dkt. No. 49).

**C.  Second Amended Complaint (Filed February 3, 2023)**

After filing the first amended complaint, Love's counsel worked with non-movant-defendants' counsel to take discovery to learn the identity of the defendants who remained unnamed in the amended complaint.  Then, on February 3, 2023, Love filed her second amended complaint, adding an additional count of negligence to the claims previously alleged.  (Second

Am. Compl., Dkt. No. 59.)  The second amended complaint names the following defendants: Captain Todd Lloyd (previously named), Lieutenant Rickie Maddox (previously named), Lt. Vandevander, Ofc. Chris Costello, Ofc. Jason Carter, Sgt. Bradford Barker, and Cpl. David Baugess.

The second amended complaint is the first filing in which movant-defendants were identified by name.  Lt. Vandevander is identified in the complaint as "an Intake Supervisor at MRRJ at all times relevant to this Complaint" who "was on duty on October 17, 2018, when Ms. Love experienced the assault by Wingfield." (Second Am. Compl. ¶¶ 9–10.)  Officers Costello and Carter are identified in the complaint as "officer[s]" and "employee[s] at MRRJ" who "were on-duty and working as booking officers at MRRJ on the date of the assault of Ms. Love described herein." (*Id.* ¶¶ 11–14.)  Lastly, Sgt. Barker and Cpl. Baugess are likewise described as "officer[s]" and "employee[s] at MRRJ," and that they "were the Watch Commander and Assistant Watch Commander, respectively, on-duty at the time Ms. Love attempted suicide at MRRJ." (*Id.* ¶¶ 14–16.)

The second amended complaint includes some factual allegations not made in the original pro se complaint that bear relevance to the claims against movant-defendants.  For example, on or about June 29, 2018 (well before the events in question), Love and Wingfield were put on a "Keep Separate"—an internal tool used to ensure certain inmates would not interact—and a note was entered in both Love's and Wingfield's inmate profiles in the Jail's Offender Management System providing that the two were to be kept separate by MRRJ personnel. (*Id.* ¶¶ 22–27.) That note remained visible to all officers at MRRJ who had access to the system on the day Love was allegedly assaulted. (*Id.* ¶ 33.)

On October 17, 2018, Deputy Laura Rogers (the deputy sheriff who transported Love to and from the court appearance) emphasized to Officers Costello and Carter that she and Wingfield were supposed to be kept separate; Officer Costello then escorted both Love and Wingfield to the intake area for booking.  (*Id.* ¶¶ 36–37.)  Contrary to the "Keep Separate", Officer Costello placed Wingfield uncuffed on a bench directly to the left of where Love was seated.  (*Id.* ¶ 40.)  Wingfield was able to move freely within the intake area and used the telephone without being handcuffed and without being accompanied by a booking officer.  (*Id.* ¶ 42.)

At some point while in the intake area, Love informed the officers in the area that she needed to use the restroom.  (*Id.* ¶ 44.)  Officers Carter and Costello were seated behind a desk facing the intake area where Love and Wingfield were seated and from which they had a clear and unobstructed view of the entrance to the intake area restroom.[5]  (*Id.* ¶ 47.)  Security video from MRRJ allegedly shows Love walking past Officers Carter and Costello and entering the intake restroom at about 12:19 p.m. on October 17, 2018; the booking officers allegedly took no action to monitor or otherwise block access to the restroom by other inmates after Love entered.  (*Id.* ¶¶ 48–49.)  Shortly before the sexual assault, Wingfield rose from the intake area bench, glanced around the intake area and at Officers Costello and Carter (who were still seated behind the intake desk), and then walked into the restroom occupied by Love.  (*Id.* ¶¶ 50–52.)  During the two minutes both individuals were in the restroom, neither officer seemed to notice that the individuals within their custody were absent.  (*Id.* ¶ 54.)  The complaint further alleges that Lt.

---

[5]  In the second amended complaint, Love also alleges that, although the door to the MRRJ intake restroom once contained an exterior lock that officers used to ensure the safety of those using the restroom and to ensure that they have access to arrestees and incarcerated individuals, at some point before October 17, 2018, the lock had been removed and the restroom door could no longer be locked.  (Second Am. Compl. ¶¶ 45–46.)

Vandevander "was present in the intake area at the time of the assault" (*id.* ¶ 58) but does not specify whether he likewise observed the events in question.

The only factual allegation in the second amended complaint that makes any reference to either Sgt. Barker or Cpl. Baugess was the statement that each of them "failed to maintain constant supervision of Ms. Love despite having knowledge of her recent assault and her recorded risk of self-harm and suicide." (*Id.* ¶ 169.) Also included in the second amended complaint are several allegations of certain conduct by "Correctional Doe Defendants" (*see, e.g.*, *id.* ¶¶ 84, 87, 170, 171, 181–83, 186–88, 216), even though Love had not named the "Correctional Doe Defendants" as parties in the second amended complaint. Furthermore, Count 5 of the second amended complaint, regarding First Amendment restrictions on speech, is brought only against the "Correctional Doe Defendants."

Cpt. Lloyd and Lt. Maddox answered this complaint. (Dkt. No. 68.) However, Lt. Vandevander, Officers Costello and Carter, Sgt. Barker, and Cpl. Baugess moved to dismiss the claims against them, arguing that the allegations are time-barred under the applicable statutes of limitations.

## II.   DISCUSSION

### A.  Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [her] to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In

determining whether this standard has been satisfied, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## B. Accrual of Claims and Motion to Dismiss

Below are the claims asserted against the movant-defendants and the dates on which these causes of action accrued, as agreed upon by both parties in the briefing:[6]

- **Count 1**: "Common-Law Gross Negligence Leading to Assault" (against Lt. Vandevander, Officer Costello, and Officer Carter);
  - o Accrued on <u>October 17, 2018</u>

- **Count 2: "**Common Law Gross Negligence Leading to Assault—Supervisory Liability" (against Lt. Vandevander);
  - o Accrued on <u>October 17, 2018</u>

- **Count 4**: "Civil Rights Violation of 42 U.S.C. § 1983: Eighth Amendment Deliberate Indifference" (against Sgt. Barker and Cpl. Baugess, as well as non-movants Lt. Maddox and Cpt. Lloyd);
  - o Accrued on <u>October 18, 2018</u>

- **Count 5**: "Civil Rights Violation of 42 U.S.C. § 1983: First Amendment Illegal Restrictions on Speech" (against "Correctional Doe Defendants"[7]);
  - o Accrued on <u>December 21, 2019</u>

- **Count 6: "**Common Law Gross Negligence: Following Assault" (against Sgt. Barker and Cpl. Baugess, as well as non-movants Lt. Maddox and Cpt. Lloyd); and
  - o Accrued on <u>October 18, 2018</u>

- **Count 7:** Civil Rights Violation of 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process (against all defendants)
  - o Accrued on <u>October 18, 2018</u>

---

[6] Dkt. No. 76 at 4–5 (movant-defendants' brief listing dates on which each claim accrued); Dkt. No. 77 at 5 ("Plaintiff agrees with the dates of accrual specified for all of her claims against Defendants, as provided in [the] motion to dismiss.")

[7] As noted earlier, Love did not name "Correctional Doe Defendants" as parties in this action.

To summarize, Love's Eighth and Fourteenth Amendment claims (Counts 4 and 7) accrued no later than October 18, 2018, Love's First Amendment claim (Count 5, if there is one) accrued no later than December 21, 2019, and Love's state-law negligence claims accrued on October 17, 2018 (Counts 1 and 2) and October 18, 2018 (Count 6).

Movant-defendants assert that each of the claims against them must be dismissed because they are time-barred based on the date of the second amended complaint (February 3, 2023). Accordingly, to resolve this motion to dismiss, the court must determine (1) whether each claim would be time barred if the amendment related back to the date of the original complaint (October 15, 2020); and (2) if the claim would not be barred, whether those claims do indeed relate back to the date of the original complaint.

## C. Applicable Statute of Limitations

The parties disagree as to which statute of limitations applies to Love's state-law claims (Counts 1, 2, and 6). Movant-defendants assert that Virginia's one-year statute of limitations for claims related to conditions of confinement applies.[8] Love, on the other hand, argues that Virginia's two-year limitations period for personal injury governs here because it applies to all personal injury claims, regardless of the underlying theory. She further maintains that, because she was not actively incarcerated when she filed her complaint (and therefore no longer had access to the MRRJ administrative grievance process), the one-year limitations period for claims related to conditions of confinement should not apply to her gross negligence claims.

The court agrees with movant-defendants that the one-year limitation period applies to Love's state-law claims. In *Lucas v. Woody*, 756 S.E.2d 447 (Va. 2014), the Supreme Court of

---

[8] Va. Code § 8.01-243.2; *see also Cubbage v. Piedmont Reg'l Jail Auth*., No. 3:18-cv-333-HEH, 2018 WL 4040231, at *1 (E.D. Va. Aug. 23, 2018) (applying the one-year limitations period in Virginia Code § 8.01-243.2 to the plaintiff's claim for gross negligence).

Virginia recognized that the one-year limitations period in Virginia Code § 8.01-243.2 applies to all personal injury actions relating to the conditions of an individual's confinement, "regardless of whether the plaintiff is still incarcerated when such action is filed." *Id.* at 451. On multiple occasions, both the Fourth Circuit and this court have looked to *Lucas* when considering the timeliness of actions relating to the conditions of confinement that were filed by former inmates after their release from confinement.[9] Here, the court will once again follow the Supreme Court of Virginia's conclusion in *Lucas*: although Love was no longer an inmate at the time she initially filed this case, the one-year limitations period for all personal injury actions relating to the conditions of confinement applies to Counts 1, 2, and 6. Because Counts 1 and 2 were not filed on or before October 17, 2019, and Count 6 was not filed on or before October 18, 2019 (i.e., one year after each of those claims accrued), those counts must be dismissed as time-barred under Virginia Code § 8.01-243.2 to the extent they are alleged against movant-defendants.

Regarding the federal constitutional claims (Counts 4, 5, and 7), the parties agree that Virginia's two-year limitations period for personal injury claims[10] applies. Those causes of action accrued on October 18, 2018 (Counts 4 and 7), and December 21, 2019 (Count 5, if it exists). The original complaint was filed on October 15, 2020. Thus, if the court finds that these claims relate back to the original complaint, they would be timely under the applicable limitations period and should not be dismissed. If the claims do not relate back, they are barred and subject to dismissal.

---

[9] *See, e.g.*, *Gemaehlich v. Johnson*, 599 F. App'x 473 (4th Cir. 2014); *Scales v. Markham*, No. 7:13CV00597, 2014 WL 4828812 (W.D. Va. Sept. 29, 2014) (citing *Lucas* and dismissing claims relating to plaintiff's confinement where claims were filed after plaintiff's release and after expiration of the one-year limitations period); *Cashion v. Lee*, No. 5:17-CV-00004, 2017 WL 5179238 (W.D. Va. Nov. 8, 2017) (same).

[10] Va. Code § 8.01-243(A).

**D. Relation Back of Amendments**

The only remaining question is whether Love has met her burden of demonstrating that the constitutional claims do indeed relate back to the date of the original complaint.[11]  The court concludes that she has not.

Under Rule 15(c)(1) of the Federal Rules of Civil Procedure, when a party seeks to amend a complaint to change the name of the party against whom a claim is asserted, the amendment will relate back if:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; . . .
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted . . . and if, within the period provided by Rule 4(m) for serving the summons and complaint,[12] the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1); *see also Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (explaining that when a proposed amendment changes the party against whom a claim is asserted, the amending party must satisfy the requirements set forth in Rule 15(c)(1)(C)(i) and (ii)).  As the Fourth Circuit has explained:

> [Rule 15]'s description of when such an amendment relates back to the original pleading focuses on the *notice to the new party* and the

---

[11]  When relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied. *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989).

[12]  Rule 4(m) requires that a defendant be served within 90 days after the complaint is filed, absent good cause. *See* Fed. R. Civ. P. 4(m).

> *effect on the new party* that the amendment will have. These core
> requirements preserve for the new party the protections of a statute
> of limitations. They assure that the new party had adequate notice
> *within the limitations period* and was not prejudiced by being
> added to the litigation.

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 469 (4th Cir. 2007) (citation omitted) (emphasis in original).

Love has clearly satisfied the requirements of Rule 15(c)(1)(B)—that is, the claims in the second amended complaint evidently "arose out of the conduct, transaction, or occurrence" set out in the original complaint—because, other than the First Amendment claim (Count 5, if it exists), the second amended complaint "seeks to add defendants rather than to alter the underlying causes of action."[13] *Wilkins v. Montgomery*, 751 F.3d 214, 225 (4th Cir. 2014). However, she has not met her burden under Rule 15(c)(1)(C) to demonstrate that, within the time period provided by Rule 4(m), movant-defendants "received such notice of the action that [they] w[ould] not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii).

**1.   Love's allegations do not meet the requirements of Rule 15(c)(1)(C)(i)**

The second amended complaint does not include any allegations demonstrating that, by January 13, 2021 (90 days after the original complaint was filed), any of the movant-defendants received actual notice of this action such that they would not be prejudiced in maintaining a defense.  And Love seemingly does not dispute this.  Rather, her only argument is that by filing the original complaint on October 15, 2020, and serving that complaint upon the defendants named therein on January 8, 2021 (85 days after filing), "Vandevander, Costello, Carter, Barker,

---

[13] Movant-defendants have not disputed that the new First Amendment claim arose out of the same "conduct, transaction, or occurrence" as the allegations in the original claim.

and Baugess *had constructive notice* of [her] complaint within the 90 days provided under Rule 4(m)" that "is sufficient for her Second Amended Complaint to relate back." (Dkt. No. 77 at 16 (emphasis added); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010)[14].) But simply proclaiming in a brief that movant-defendants were on constructive notice (instead of demonstrating the same through factual allegations in the complaint) does not make it so.

The Fourth Circuit has recognized that a party may be on constructive notice of the action for purposes of Rule 15(c)(1)(C)(i) "when a plaintiff alleges a comprehensible claim against one of a group of closely related and functioning business entities or corporations." *Goodman*, 494 F.3d at 475. Those are not the circumstances presented here. Indeed, the posture of Love's case differs from the situation in *Goodman* in four crucial respects. In *Goodman*, the putative defendant (1) was a subsidiary corporation of another defendant entity; (2) was explicitly mentioned in the factual allegations of the original complaint; (3) shared the same lawyers as the defendant parent corporation; and (4) conceded that it was aware of the suit within the Rule 4(m) period. *Id.* But here, movant-defendants (1) are merely employees or co-workers of the original named defendants (MRRJA, Lee, Lloyd, and Maddox), as opposed to closely related and functioning business entities; (2) were never mentioned by name in the original complaint; (3) do not share the same lawyers as the original defendants; and (4) have not conceded that they ever became aware of this lawsuit within the Rule 4(m) period. *See, e.g., Wilkins*, 751 F.3d at 225–26 (finding no constructive notice where the putative defendants only worked for the original defendants, were not related entities, and were not represented by the same counsel). Without

---

[14] As movant-defendants underscore in their brief, the Supreme Court's decision in *Krupski* does not address constructive notice under Rule 15(c)(1)(C)(i) because the Eleventh Circuit had already determined that the defendant was on constructive notice, and the defendant did not challenge that finding on further appeal in the Supreme Court. Rather, the *Krupski* Court only considered whether Rule 15(c)(1)(C)*(ii)* was satisfied. 560 U.S. at 545, 554–56. Even still, the parties in *Krupski* were "related corporate entities" that shared the same lawyers— neither of which is true for the defendants named here.

more, this court cannot find that movant-defendants had constructive notice under Rule 15(c)(1)(C)(i).

### 2. Love's allegations do not meet the requirements of Rule 15(c)(1)(C)(ii)

But even if Love had demonstrated that movant-defendants had constructive notice of the suit's *existence*, she would also need to prove that movant-defendants knew, or should have known, that they *would have been named* in the original complaint but for a "mistake" concerning their identities.  "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548.

It is well-settled in this circuit that, under Rule 15(c)(1)(C)(ii), a plaintiff cannot amend her complaint to remove "John Doe" or similarly pseudonymized defendants for real parties, because the plaintiff's lack of knowledge of the proper defendants is not considered a "mistake" under the rule.  *See Goodman*, 494 F.3d at 470 ("[T]he majority of courts agree that Rule 15(c)[(1)(C)(ii)] does not permit substitution for 'Doe' defendants after the limitations period has run.")  In other words, "naming Doe defendants self-evidently is no 'mistake' such that the Doe substitute has received proper notice."  *Id.* at 471.

Here, that is precisely what Love attempted to do in her second amended complaint.  She initially named "unknown jail officers" as a defendant in the original complaint, then substituted in "Booking Doe Defendants" and "Correctional Doe Defendants" in the first amended complaint, and finally identified movant-defendants by name for the first time in the second amended complaint—which was filed well over two years after Love initiated this case.  To permit amendments of that sort "would produce a paradoxical result wherein a plaintiff with no knowledge of the proper defendant could file a timely complaint naming any entity as a

defendant and then amend the complaint to add the proper defendant after the statute of limitations had run." *Locklear*, 457 F.3d at 367.  Accordingly, the claims asserted in the second amended complaint do not meet Rule 15(c)(1)(C)(ii)'s requirements.

In sum, Love has failed to demonstrate that the amendments reflected in the second amended complaint—namely, adding Vandevander, Costello, Carter, Barker, and Baugess as defendants in this action—relate back to the date of the original complaint.  Thus, the constitutional claims against the movant-defendants are barred by the applicable statute of limitations.

### III.  CONCLUSION

For the foregoing reasons, the court will grant the motion to dismiss (Dkt. No. 75).  Movant-defendants will be dismissed from this action, and Counts 1, 2, 4, 5, 6, and 7 will be dismissed to the extent brought against them.  The court will issue an appropriate order.

Entered: July 28, 2023

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge